# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **GREG RICHARDSON, DEBORAH RICHARDSON, and ROBERT RICHARDSON,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 3:12-CV-368** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM & ORDER

Pending before the court are two motions *in limine*. Plaintiffs have filed a Motion *in Limine* Regarding Licensure Status ("First Motion *in Limine*") (Docket No. 65), to which the defendant has filed a Response (Docket No. 71), and the plaintiff has filed a Reply (Docket No. 75). Plaintiffs have also filed a Motion in Limine Regarding Expert Testimony by Dale Farmer on Causation ("Second Motion *in Limine*") (Docket No. 67), to which the defendant has filed a Response (Docket No. 72), and the plaintiffs have filed a Reply (Docket No. 76). For the reasons that follow, the First Motion *in Limine* will be granted and the Second Motion *in Limine* will be granted in part and denied in part.

This is an action that arises from a motor vehicle accident that occurred on Clarksville Pike, in Davidson County, Tennessee, on July 23, 2009. Robert Richardson ("Richardson"), then 15 years of age, was traveling north on a 2003 Kawasaki motorcycle and collided with a United States Postal Service ("U.S.P.S.") vehicle driven by U.S.P.S. employee Leslie Golston ("Golston"). Richardson was in possession of a Tennessee Class H hardship driving license,

which allowed him to operate, in limited circumstances, a motorcycle with a motor cylinder capacity not exceeding 125 cubic centimeters. *See* Tenn. Code Ann. § 55-8-101(36). The Kawasaki had a motor cylinder capacity of 636 cubic centimeters.

The plaintiffs[1] brought suit against the United States pursuant to the Federal Tort Claims Act after exhausting their attempt to resolve their claims for property damages and medical bills on an administrative basis. The plaintiffs maintain that Golston was making an unsafe U-turn when he collided with Richardson, while the defendant contends that Golston was traveling north delivering mail as per usual when the accident occurred. Accordingly, the plaintiffs maintain that liability rests solely on the part of Golston, but the defendant contends that the negligence of Richardson in failing to avoid Golston was, at least, more than fifty-one percent at fault for the collision.

## I.    First Motion *in Limine*

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* 401.

In the First Motion *in Limine*, the plaintiffs seek to exclude, under Rules 401 and 402, "any testimony or other evidence as to the drivers' license status of Robert Richardson at the time of the collision, whether he was properly licensed to operate the motorcycle that he was riding at the time of the collision and/or other evidence regarding his legal status as a motor vehicle

---

[1] Under Tennessee law, Robert Richardson's parents were responsible for pursuing damages on his behalf and, as such, are plaintiffs in this action.

operator." First Motion *in Limine* at p. 1. The plaintiffs contend that this evidence is not relevant because, as a matter of Tennessee law, whether Richardson had a license or the right kind of license to operate the Kawasaki ZX636 is not relevant to a defense theory that Richardson was at fault for his own injuries and, therefore, is not admissible.[2]

The plaintiffs rely upon several Tennessee cases for the principle that the lack of proper licensing is an improper grounds for a defense of contributory negligence. In *Brown v. Smith*, 604 S.W.2d 56 (Tenn. Ct. App. 1980), the court considered whether a fourteen year-old's lack of a license to operate a motorcycle could be considered contributory negligence. The court found that there was no way a jury could have found that violation of the licensing statute was a proximate cause of the accident. Furthermore, the court found that there was no proof that the unlicensed driver had been anything other than a competent and qualified driver, although unlicensed, prior to the accident. The court was careful to remind the parties of the important rule that only violations of statutes that are proximate causes of the injuries of other parties will be admissible to bar recovery. Accordingly, *Brown* stands for the proposition that a violation of a motor vehicle licensing law, by itself, is not evidence of a violation of a duty owing to another person on the roadway (rather, the illegality is a mere condition, rather than cause, of the plaintiff's injury). A few years later, in *Bowers v. Thompson*, the Tennessee Court of Appeals was more succinct. The court noted that it had "no quarrel" with the plaintiff's assertion that "proof concerning her lacking a driver's license [was] inadmissible on the issue of her

---

[2] Under the Federal Tort Claims Act, this court applies the substantive law of the state where the accident occurred (*i.e.*, Tennessee). 28 U.S.C. § 1346; *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995).

3

contributory negligence." *Bowers v. Thompson*, 688 S.W.2d 827, 828 (Tenn. Ct. App. 1984).[3]

The defendant's Response to the First Motion is Limine is thoroughly unpersuasive. The defendant fails to even *mention* the straightforward caselaw raised by the plaintiffs, essentially waiving opposition to the plaintiffs' arguments based thereon. Instead, the defendant offers a convoluted tour of its prospective defense at trial, which it summarizes as follows: "[t]he defendant's theory of contributory negligence is that because the motorcycle was too large and powerful for the minor, and because [Richardson] was traveling at an impermissibly high rate of speed, he lacked the ability to react, stop, and otherwise avoid the collision." Response at pp. 2-3. After spending several pages reiterating the facts of the case, the defendant states in a conclusory fashion, with no caselaw support: "[t]he fact that the Richardson family allowed their son on a motorcycle that was too big, and too fast, for him, and was contrary to the specifications of his hardship license, is highly relevant. If Robert Richardson was on a motorcycle that was within the specification of his license, i.e., a legal motorcycle, he would not have been able to go as fast as he was going and would have had a better opportunity to stop when he came around the opportunity on Clarksville Pike, past the trees that obstructed the view as he was in the curve, and saw Mr. Golston doing whatever he was doing. In short, on a smaller, legal motorcycle, Mr. Richardson would have had more time to react."[4] *See* Response at pp. 5-6 (emphasis added).

---

[3] The court has also surveyed the law across the United States and finds that it is the clear majority rule that a violation of a motor vehicle licensing law, by itself, is irrelevant evidence to a question of negligence because it has no causal connection with an accident and that the question of a driver's care can only be resolved by examining his behavior on the day of the accident, irrespective of licensing status. *See* 29 A.L.R. 963 § 5 (citing *Bowers* and collecting cases from California, Connecticut, Georgia, Illinois, Indiana, Kentucky, Maryland, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, and Vermont).

[4] It appears that the defendant may be suggesting that it blames Richardson's parents for entrusting Richardson with the Kawasaki 636cc. However, the defendant has made no such

This effort by the defendant to create a causal relationship between Richardson's licensure status and the accident fails. The Tennessee licensure statutes created a duty between Richardson and the state of Tennessee, not Richardson and Golston; the defendant has offered no precedent to suggest otherwise. Furthermore, there is no evidence that Richardson could not handle the Kawasaki 636cc motorcycle prior to the day of the accident or that he was in any way a dangerous driver. Pursuant to *Brown* and *Bowers*, the absence of the proper class of driving license does not relate to the accident in a manner sufficient to satisfy the requirements of proximate cause. Rather, the question of Richardson's due care can only be determined by his conduct at the time when the accident occurred. Simply put, the defendants have not established to the court's satisfaction that the specifications of Richardson's driver's license had any causal connection with the accident. Accordingly, the court will exclude evidence concerning Richardson's licensure status as irrelevant under Federal Rule of Civil Procedure 401 and, therefore, inadmissible under Federal Rule of Civil Procedure 402.

## II.    <u>Second Motion *in Limine*</u>

In addition to Rules 401 and 402, Federal Rule of Evidence 702 only permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Like all evidence, the admissibility of expert testimony is . . . subject to a determination of relevancy under Rule 401. . . ." *United States v. Geiger*, 303 F. App'x 327, 329 (6th Cir. 2008); *see also Beck v. Haik*, 377 F.3d 624, 637 (6th Cir. 2004) (requiring that an expert's testimony must "meet[ ] the general relevance requirement of Fed. R. Evid. 401 and the expert opinion requirements of Fed. R. Evid. 702"), *overruled on other grounds by Adkins v.*

---

claim in this case.

*Wolever*, 554 F.3d 650 (6th Cir. 2009). Thus, when determining admissibility, "the court must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Bunke*, No. 09–3311, 2011 U.S. App. LEXIS 1158, at *20 (6th Cir. Jan. 19, 2011) (quoting *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000)).

Federal Rule of Evidence 702 provides as follows:

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court identified four non-exclusive factors that may be helpful to the court in assessing the relevance and reliability of expert testimony, including (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance of standards controlling the theory or technique's operation; and (4) the extent to which a known technique or theory has gained general acceptance within a relevant scientific community. *Id.* at 593–94. In its "gate-keeping" role, a trial court must evaluate the relevance and reliability of all expert testimony, whether the testimony offered is "scientific" or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). That said, the *Daubert* factors do not constitute a "definitive checklist or test." *Id.* at 150. Indeed, the court's fundamental objective is to generally evaluate, based on whatever factors are important to the particular case, the relevancy and reliability of the testimony and not necessarily to explore factors that might not be relevant to a particular case, such as whether the expert's methods are

subject to empirical testing.  *Id.* at 151.  That is, the court is to ensure that the proffered testimony

is reliable and relevant and that the expert, whatever his or her field, "employs in the courtroom

the same level of intellectual rigor that characterizes the practice of an expert in the relevant

field."[5]  *Id.* at 152.

In this case, the defendant has retained the services of Dale Farmer ("Farmer"), the

proprietor of Farmer Collision Analysis in Church Hill, Tennessee, to prepare an expert report

and offer expert opinions concerning the causes of the accident.  On August 30, 2012, Farmer

produced a thirteen-page report that analyzes the accident and summarizes his opinions.  The

report summarizes several conclusions as to causation, as follows:

> Several causal factors arise from this investigation regarding the
> operation of the Kawasaki on July 23, 2009 by Robert Richardson.
>
> 1. Robert Richardson was operating the vehicle above the posted
> speed limit of 55 miles per hour.
>
> 2. Mr. Richardson was not licensed to operate a motorcycle with an
> engine size in excess of the 125 cc as mandated by Tennessee State
> Law and the Kawasaki had an engine rating of 636 cc. Mr.
> Richardson clearly disregarded State Law by operating
> the Kawasaki.
>
> 3. As an evasive action, Mr. Richardson took the Kawasaki to the
> left and accelerated in an attempt to overtake the Grumman. Going
> to the left created extra dangerous hazards for Mr. Richardson, Mr.
> Golston and other motorist [sic] on Clarksville Pike. These hazards
> are:

---

[5] The proponent has the burden of establishing that the pertinent admissibility
requirements have been met by a preponderance of the evidence. Fed. R. Evid. 104; *see also
Pride v. Bic Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000) ("In short, under *Daubert* and its
progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the
expert whose testimony is being offered is qualified and will testify to scientific knowledge that
will assist the trier of fact in understanding and disposing of issues relevant to the case.") (citing
*Daubert*, 509 U.S. at 592 n. 10).

a. Driving into oncoming traffic and into the path of a south
bound sport utility vehicle.
b. Attempting to pass a vehicle in a no passing zone.
c. Increasing the vehicle speed.
d. Returning to the north bound lane and striking the
stopped Grumman.

4. Due to the sight distance in excess of 450 feet, the proper
evasive action for Mr. Richardson to take would have been to apply
the vehicle brakes and steer to the right. Going to the right would
put the Kawasaki away from the left turning vehicle and
approaching south bound vehicles.

The major causal factors in this crash were on Mr. Richardson.
Speeding, operating the vehicle outside the driver's license
restriction, improper passing, failure to slow the vehicle by braking
and steering to the left instead of the right and operator
inexperience all contributed to the crash. The crash would not have
occurred had Mr. Richardson observed the driver's license
restrictions and took proper evasive action.

(Docket No. 69-2, Farmer Report at pp. 11-12).

As an initial matter, Farmer's opinion focuses in part on the fact that Richardson was not

properly licensed under Tennessee law; indeed, it is a topic of significant interest for Farmer. As

discussed *supra*, the court has found that evidence concerning Richardson's licensure status is

irrelevant and inadmissible. The court, therefore, finds that Farmer's opinion based on this

evidence, including any conclusion that the accident would not have occurred if Richardson had

been properly licensed, should also be excluded.

The plaintiffs raise several other objections to Farmer's opinions. First, the plaintiffs

object to Farmer's conclusion that Richardson was operating the motorcycle above fifty-five

miles per hour. Farmer concluded that Richardson was traveling at least sixty-two miles per

hour. The plaintiffs contend that Farmer has not "scientifically established" this because he (a)

utilized several assumptions in his calculations and (b) chose one of two conflicting data points regarding a particular measurement. As to the former, the plaintiffs argue that Farmer improperly assumed a degree of road friction and the particular trajectory that Richardson flew in the air. As to the latter, the plaintiffs contend that Farmer revisited the accident site and inappropriately re-created a body flight distance measurement of 268 feet, rather than use a rough measurement of 200 feet made by a U.S.P.S. investigator at the time of the accident.[6] The plaintiffs claim these actions by Farmer indicate his opinion is not the result of reliable principles and methods.

Farmer is an accredited accident reconstruction specialist who has personally performed between 1,000 and 1,500 accident reconstructions since becoming specially educated and credentialed to do so. (Docket No. 69-2, Farmer Dep., pp. 7-9) He also teaches accident reconstruction for the state of Tennessee. *Id.* Farmer was previously a law enforcement officer with the Kingsport, Tennessee Police Department, where he was involved with thousands of other accident reconstructions. *Id.* The court finds Farmer generally qualified to opine on the subject of accident reconstruction.

The court examines Farmer's methodology to see if it is generally accepted and can be tested or subjected to peer review by the relevant community of accident reconstruction experts. Farmer used two different mathematical formulas to determine the speed calculation – the "airborne formula" and the "pedestrian formula," both of which have long been in existence, are featured in manuals, and are "taught across the United States and probably worldwide." (Docket No. 69-2, Farmer Dep., pp. 20-21.) The court does not find fault with this methodology. Furthermore, the court agrees with the defendant that – despite an appeal to *Daubert* and Rule

---

[6] A longer distance results in a higher calculated speed at the point of impact.

702 – the plaintiffs do not appear to actually be attacking the methodology used in determining speed, but are rather questioning the particular factors that Farmer has chosen to use in his calculations. This goes to the merit and weight of the evidence, not the admissibility. In its gatekeeper role, therefore, the court finds Farmer's opinion as to the speed of the motorcycle to be sufficiently reliable and intellectually rigorous for admission into evidence.

The plaintiffs also briefly contend that Farmer's opinion that excessive speed was a proximate cause of the accident should be excluded as irrelevant and improper because Farmer does not draw an extensive enough causal link. The plaintiffs essentially argue that Farmer does not sufficiently explain how speed played a role in the crash. The defendant responds to the plaintiffs' objection by stating that "there cannot be any doubt that excessive speed played a role in this crash." Response at p. 8. It is the defendant's theory of the case that Richardson, as a result of the manner in which he was operating the Kawasaki 636cc, acted negligently. This includes the notion that the faster Richardson was moving, the more dangerous of a situation he created and the less time he had to make decisions immediately prior to the accident.

The court finds that Farmer's opinion concerning the speed at which Richardson was traveling is indeed relevant to the proximate cause of the accident, as well to the defendant's case for contributory negligence. The speed limit on the roadway was fifty-five miles per hour. Richardson was calculated at exceeding that limit by at least seven miles per hour, was ticketed for speeding, and, indeed, there is evidence that Richardson was *increasing* speed (in a no passing zone) at the time of the accident. Farmer has opined as to (a) the conditions on the roadway and (b) the relationship of speed to braking and stopping distance. It is relevant and of assistance to the trier of fact for Farmer to opine as to the effect of speed upon the accident. The

court notes that plaintiffs reference an instance in Farmer's deposition where he stated that"[s]peed would not be a huge factor regardless." (Docket No. 69-2, Farmer Dep., p. 75.) This goes to the weight of Farmer's evidence, not the admissibility of his opinion. The plaintiffs are free to impeach Farmer with this testimony. Similarly, the fact that Richardson did not brake before the accident may diminish the weight of Farmer's opinion regarding speed and stopping distance, but it does not render Farmer's opinion irrelevant. Accordingly, the court will allow Farmer's expert testimony as to the speed of the motorcycle.

Finally, the plaintiffs object to Farmer's expert opinion that Richardson's "improper "evasive action" was a proximate cause of the accident. Farmer opines that Richardson did not select the best (or even a good) option in evading Golston. Specifically, Farmer blames Richardson for steering left and attempting to overtake Golston in a no passing zone rather than applying the brakes and steering to the right. The plaintiffs contend that Richardson is entitled to the benefit of the "sudden emergency doctrine," which allows some leeway in judgment during evasive split second decisions, as a mitigating factor against Farmer's assignment of blame. The sudden emergency doctrine recognizes that a person confronted with a sudden or unexpected emergency that calls for immediate action is not expected to exercise the same accuracy of judgment as one acting under normal circumstances who has time for reflection and thought before acting. *See McCall v. Wilder*, 913 S.W.2d 150, 157 (Tenn. 1995).

The defendant's response to this argument is somewhat bewildering – namely, suggesting that the doctrine is not available to Richardson because (a) he "helped to *create* the sudden emergency by speeding and thus lessened his own reaction time and (b) "he did not merely fail to choose the best evasive course, but in fact chose the *worst* course." Response at 10 (emphasis in

original).  *McCall* offers no support as to why either of these facts, if true, would entitle the defendant to prevail on this question, and the defendant cites no other cases in support. Accordingly, the sudden emergency doctrine may be applicable in this case.  However, the sudden emergency doctrine is not a defense as a matter of law, but rather just a factor in the total comparative fault analysis.  *McCall*, 913 S.W.2d. at 917.  The plaintiffs have offered no authority for the position that the fact that Richardson may eventually benefit from application of the doctrine requires that Farmer's opinion be excluded prior to trial under Rule 702 and *Daubert*.

The plaintiffs further complain that Farmer's "improper evasive action" proximate causation opinion constitutes improper speculation.  While Farmer's opinions are far from models of scientific depth, the court does not agree with the plaintiffs.  The court acknowledges that Farmer is not an expert in motorcycle riding, steering, handling, or braking.  The court also recognizes that Farmer's opinion concerning Richardson's evasive maneuvers basically states the obvious – namely, that steering to the left resulted in a crash and that steering to the right might have avoided the crash.  Farmer says little else.  Accordingly, this opinion is close to the type of hindsight disfavored by the court in *Hensley v. Rector*, No. 2:03-CV-3432005 WL 6053200, at *1 (E.D. Tenn. Nov. 10, 2005).  But there are differences.  In *Hensley*, there was essentially no evidence, and the court found that Farmer assumed a speed to "fit the facts" in hindsight.  *Id.* Here, Farmer had the benefit of some facts in the record, an investigating officer report, a contemporaneous interview with Richardson, and his own speed measurements and calculations. Accordingly, the court finds this aspect of Farmer's opinion to be reliable, relevant and admissible.  The plaintiffs will be able at trial to explore the degree to which they believe this opinion as to "improper evasive action" causation is merely elevated speculation.

## CONCLUSION

For the foregoing reasons, (1) plaintiffs' Motion *in Limine* Regarding Licensure Status (Docket No. 65) is **GRANTED** and (2) plaintiffs' Motion *in Limine* Regarding Expert Testimony by Dale Farmer on Causation is **GRANTED IN PART AND DENIED IN PART**.

The defendant shall file a revised report that reflects the court's rulings herein by June 1, 2015.

It is so **ORDERED**.

Enter this 7th day of May 2015.

_____
ALETA A. TRAUGER
United States District Judge